MARY'S OPINION HEADING 



 NO. 12-02-00313-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JACK NORMAN VAUGHN, JR.,
§
 APPEAL FROM THE 349TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HOUSTON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Jack Norman Vaughn, Jr. ("Appellant") was convicted by a jury of six counts of aggravated
sexual assault. The jury assessed punishment at ninety-nine years of imprisonment and a fine of
$10,000.00 on each count. On appeal, Appellant contends the trial court erred by allowing a minor
complaining witness, J.N.V., to testify by closed circuit television. We affirm.


Background


 Appellant was charged by indictment with seven counts of aggravated sexual assault of a child
under the age of fourteen. (1) The named victims were Appellant's two biological children, J.N.V. and
J.L.V., and Appellant's stepdaughter, A.M.F. The sexual assaults were alleged to have occurred on or
about July 23, 1998. Counts six and seven of the indictment alleged the aggravated sexual assault of
J.N.V.

 The State made an oral motion to the trial court requesting that J.N.V. be allowed to testify by
closed circuit television as permitted by Article 38.071 of the Texas Code of Criminal Procedure. (2)
Appellant objected to the use of closed circuit testimony on constitutional grounds arguing that the use
of this testimony would violate his Sixth Amendment right to confrontation and "[his] rights under the
due process clause and due course of law clause." At the conclusion of the hearing, the trial court
granted the State's motion finding that


 [J.N.V., J.L.V., and A.M.F.] as of this moment, at least as to the younger two, and perhaps even the third
one, the oldest one, they still have a lot of emotional and mental problems. If putting those children in
another room out of sight of the defendant, and the witnesses, it will help them later in life, I'm going to
do all I can to protect that right. If I make a mistake, I want to make it at least at this moment in their
lives. But I believe the facts to me that's [sic] been presented are clear that it would be in the best interest
of those children. And we have one child that's 13 physically, maybe some question as we go along as
to mentally exactly what age they are. So, I certainly believe that both those children should be protected
at this time by the use of the video, so I'm going to grant that motion.



 A jury trial commenced on September 3, 2002. Appellant entered his plea of "not guilty" to the
indictment. Both J.L.V. and J.N.V. testified via closed circuit television. At the outset of J.L.V.'s
testimony, the trial court instructed the jury that 


 [w]e're going to be doing something today that will be something that may be a little bit unfamiliar to you. 
We're going to have a witness that's going to be called and it will be one of the minor children. Okay. 
The minor child will not appear right here, but the minor child is actually in the courthouse on another
floor. The minor child will be seen through our TV screen. Okay. The child will be able to answer, the
questions will be asked directly to the child from here. Everybody is here except the child. The child will
hear and the child will respond to the questions that's [sic] asked.



 At the close of testimony, the jury convicted Appellant of six counts of aggravated sexual
assault. (3) After the punishment hearing, it assessed his punishment at ninety-nine years of imprisonment
and a fine of $10,000.00 on each of the six counts of aggravated sexual assault. Appellant timely filed
his notice of appeal to this court. In one issue, Appellant contends that by allowing thirteen-year-old
J.N.V. to testify via closed circuit television, the trial court abused its discretion and violated his
constitutional rights and the provisions of article 38.071.


Article 38.071


 Appellant contends that allowing J.N.V. to testify by closed circuit television is contrary to his
rights under Article 38.071 of the Texas Code of Criminal Procedure and alleges an abuse of discretion
by the trial court. Specifically, he argues that there was no necessity for J.N.V. to testify by closed
circuit instead of appearing in the courtroom in person.

 We review the trial court's ruling for an abuse of discretion. See Marx v. State, 987 S.W.2d
577, 581 n.2 (Tex. Crim. App. 1999); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
A trial court abuses its discretion when it "applie[s] an erroneous legal standard, or when no reasonable
view of the record could support the trial court's conclusion under the correct law and the facts viewed
in the light most favorable to its legal conclusion." Dubose v. State, 915 S.W.2d 493, 497-98 (Tex.
Crim. App. 1996). Discretion is abused when the decision falls outside the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

 Review of a necessity hearing typically involves reviewing a trial court's findings of fact. Marx
v. State, 953 S.W.2d 321, 327 (Tex. App.-Austin 1997), aff'd, 987 S.W.2d 577 (Tex. Crim. App. 1999). 
The trial court in the instant case did not record findings of fact nor did Appellant challenge the absence
of those findings. Therefore, we must determine whether the record supports the trial court's ultimate
determination of necessity. See Gonzales v. State, 818 S.W.2d 756, 765 (Tex. Crim. App. 1991) (citing
Maryland v. Craig, 497 U.S. 836, 855, 110 S. Ct. 3157, 3168-69, 111 L. Ed. 2d 666 (1990)). When
reviewing the hearing on necessity in the instant case, we must examine the evidence upon which the
trial court based its ruling to allow the presentation of the closed circuit testimony. Hightower v. State,
822 S.W.2d 48, 53 (Tex. Crim. App. 1992); Gonzales, 818 S.W.2d at 768 (Benavides, J., concurring).

 Article 38.071 provides that, in certain specified circumstances, a child victim's testimony may
be taken via videotape or closed circuit television outside a defendant's presence. Act of July 21, 1987,
70th Leg., 2nd C.S., ch. 55, § 1, 1987 Tex. Gen. Laws 180, 182 (amended 2001) (current version at
Tex. Code Crim. Proc. Ann. art. 38.071, § 4 (Vernon Supp. 2004)); Act of May 24, 1991, 72nd Leg.,
R.S., ch. 266, § 1, 1991 Tex. Gen. Laws 1176 (amended 2001) (current version at Tex. Code Crim.
Proc. Ann. art. 38.071, § 3 (Vernon Supp. 2004)). Article 38.071, section 1 provides, in relevant part:


 This article applies only to a proceeding in the prosecution of [certain specified sex and assaultive
offenses, including aggravated sexual assault of a child] if the offense is alleged to have been committed
against a child 12 years of age or younger and if the trial court finds that the child is unavailable to testify
at the trial of the offense, and applies only to the statements or testimony of that child.



Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 14.24, 1995 Tex. Gen. Laws 458, 834 (amended 2001)
(current version at Tex. Code Crim. Proc. Ann. art. 38.071, § 1 (Vernon Supp. 2004)).

 Article 38.071 has not been strictly limited to a child witness twelve years old and under. In
Marx, a thirteen-year-old sexual assault victim was allowed to testify by closed circuit television. 
Marx, 987 S.W.2d at 582. The Marx court held that article 38.071, which addresses special procedures
for testifying for child victims twelve years of age or younger, does not prohibit the court's developing
different procedures under other circumstances not constrained by the constitution. Id. at 583 (citing
Gonzales, 818 S.W.2d at 768).

 Appellant argues that the instant case and Marx are distinguishable. He points out that in Marx,
the witness was sixty percent mentally retarded, had shown fear, and told her grandfather that the
appellant in that case had threatened her. Also in Marx, the child's teacher testified that the witness
read at a six-year-old's level, dreaded the possibility of testifying, cried about it in class, and was quite
fearful. Appellant argues that there was no specific testimony in the instant case that would justify the
decision to present J.N.V. by closed circuit.

 In this case, the trial court heard the testimony of five witnesses for the State, all of whom had
direct contact with J.N.V. At the hearing, Child Protective Services Investigator Elaine Baggerly stated
that based on her experience, an in-court confrontation of a parent who has previously abused the child
can be traumatic for that child.

 The second witness was Lee West, a licensed counselor with specialized training in play therapy
and sexual abuse. Mr. West treats sexually molested, physically abused, and emotionally abused
children and provided services to J.N.V. from October 27, 2001 to April 3, 2002. Initially, according
to Mr. West, J.N.V. was emotionally frozen and had a flat affect when discussing the abuse. J.N.V. also
exhibited regressive behavior. Mr. West testified that in cases in which the victim is old enough
emotionally and physically, it could be therapeutic for them to face the person who abused them. 
However, he testified that he did not recommend that J.N.V. face Appellant because J.N.V.'s emotional
age and chronological age are different. In Mr. West's opinion, J.N.V. would be quite traumatized and
freeze up again if he were forced to testify in the courtroom in the presence of Appellant.

 Tara Felmly, a past foster mother to J.N.V., also testified. J.N.V. was placed in her home when
he was nine years old. When J.N.V. began living with her family, he was quiet, wet the bed, soiled and
hid his underwear, hoarded food, stole things, became physical when angry, and had problems with
trust. When stressed, J.N.V. would regress. In Ms. Felmly's opinion, J.N.V. was terrified and would
be devastated if forced to testify in Appellant's presence.

 J.N.V.'s current foster mother, Amy Reineke, testified that J.N.V. had lived in her home for the
past year. He was the last victim to come forward about the abuse, and he is still fragile. She testified
that the added stress of testifying in court in front of Appellant could be detrimental to J.N.V.

 The State's last witness was clinical psychologist Dr. Richard Connell. In his practice, Dr.
Connell has treated many sexually abused children. Dr. Connell assessed J.N.V. and testified that
J.N.V.'s behavior is consistent with a child that has been sexually abused. In Dr. Connell's opinion,
forcing J.N.V. to testify in the presence of Appellant would have no therapeutic value and would be
harmful to him. J.N.V. could experience significant trauma from such an experience. Dr. Connell
believed psychological harm and emotional harm could result if J.N.V. were forced to testify in the
presence of Appellant.

 There are certain similarities in Marx and the instant case that are apparent from the record. The
court in each case conducted a pretrial hearing on necessity of the use of closed circuit testimony. The
age of the child in Marx was thirteen, as is J.N.V. The trial court in Marx heard from witnesses that
the child in that case would suffer emotional and physical harm and that she would be traumatized by
being required to testify in the defendant's presence. In the instant case, witnesses were presented who
testified as to the harm that could result to J.N.V. if he were forced to testify in the presence of
Appellant. The substance of the testimony in both cases drew more parallels than differences, especially
with regard to emotional harm and traumatization to the child. See Marx, 987 S.W.2d at 578-83.

 Based on the testimony of these witnesses, the trial court had ample evidence to find that the use
of the closed circuit procedure was necessary to protect the child's welfare and that J.N.V. would be
traumatized by testifying in Appellant's presence.

 Therefore, we cannot say that the fact finding by the trial court is outside the zone of reasonable
disagreement or that the trial court abused its discretion in finding J.N.V. would suffer emotional harm
if required to testify in Appellant's presence. We hold that the trial court's ruling did not violate
Appellant's rights under Article 38.071 of the Texas Code of Criminal Procedure.


Constitutional Rights


 Appellant contends that allowing J.N.V. to testify by closed circuit television is contrary to his
right to confront witnesses, due process, and due course of law under the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution and under Article I, Sections 10, 13, and 19 of the Texas
Constitution.

Right to Confrontation

 The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal
prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him." U.S.
Const. amend. VI. This right to confrontation was made applicable to the states by the Due Process
Clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069, 13
L. Ed. 2d 923 (1965). Article I, section 10 of the Texas Constitution guarantees that an accused "shall
be confronted by the witnesses against him." Tex. Const. art. I, § 10. The confrontation provision
in the Texas Constitution is interpreted in accordance with the Sixth Amendment. Gonzales, 818
S.W.2d at 763.

 In Craig, the Supreme Court upheld a Maryland statute that permitted a factfinder to receive,
by closed circuit television, the testimony of a child witness alleged to be the victim of child abuse. 
Craig, 497 U.S. at 860, 110 S. Ct. at 3171. However, the Court held that before testimony by closed
circuit is received, the trial judge must determine that the testimony of the child victim in open court
and in the presence of the defendant would result in the child suffering serious emotional distress to the
extent that the child could not reasonably communicate. Id., 497 U.S. at 857, 110 S. Ct. at 3170. The
central concern of the Confrontation Clause [of the Sixth Amendment] is to ensure the reliability of the
evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary
proceeding before the trier of fact." Id., 497 U.S. at 845, 110 S. Ct. at 3163. The Confrontation Clause
reflects a preference for face-to-face confrontation at trial, but that preference must occasionally give
way to considerations of public policy and the necessities of the case. Id. 497 U.S. at 849, 110 S. Ct.
at 3165. Still, a defendant's right to confront accusatory witnesses may be satisfied absent a physical,
face-to-face confrontation at trial only when denial of such confrontation is necessary to further an
important public policy and the reliability of the testimony is otherwise assured. Id., 497 U.S. at 850,
110 S. Ct. at 3166. In particular, "if the State makes an adequate showing of necessity, the state interest
in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important
to justify the use of a special procedure that permits a child witness in such cases to testify at trial
against a defendant in the absence of face-to-face confrontation with the defendant." Id., 497 U.S. at
855, 110 S. Ct. at 3169. The requisite necessity to justify the use of such a special procedure in a child
abuse case may be shown if the trial court determines that (1) the use of the procedure is necessary to
protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be
traumatized by the presence of the defendant; and (3) the trauma would be more than de minimis, i.e.,
more than mere nervousness or excitement or some reluctance to testify. Id. 497 U.S. at 855-56, 110
S. Ct. at 3169; see Hightower v. State, 822 S.W.2d 48, 51 (Tex. Crim. App. 1991); Gonzales, 818
S.W.2d at 761-62. The requisite reliability of the child witness's testimony may be assured absent a
face-to-face encounter through the combined effect of the witness's testimony under oath (or other
admonishment, appropriate to the child's age and maturity, to testify truthfully), subject to cross-examination, and the factfinder's ability to observe the witness's demeanor, even if only on a video
monitor. Craig, 497 U.S. at 857, 110 S. Ct. at 3170.

 As previously stated, the record supports the trial court's finding of necessity. The trial court
used a closed-circuit transmission into the courtroom from a remote location in the courthouse. J.N.V.'s
image and voice were projected to Appellant, counsel, the court, and the jury. J.N.V. could hear the
questions but could not see the parties from the remote location. Furthermore, the reliability of J.N.V.'s
testimony was adequately ensured by the trial court. The trial court administered the oath in person to
the child at the remote location, and J.N.V. testified after promising to do so truthfully. He was subject
to cross-examination by Appellant's counsel. The jury was able to see and hear J.N.V. Because the
evidence supports the trial court's findings of necessity and because adequate measures were taken to
ensure the reliability of J.N.V.'s testimony, Appellant's rights under the Sixth Amendment were not
violated.

Due Process and Due Course of Law

 The Texas Constitution provides that "every person for an injury done him . . . shall have
remedy by due course of law." Tex. Const. art. I, § 13. Furthermore, "no citizen of this State shall be
deprived of life, liberty, property, privileges or immunities or in any manner disenfranchised, except
by due course of the law of the land." Tex. Const. art. I, § 19.

 Appellant contends the trial court erred by admitting the closed circuit testimony of J.N.V. in
violation of due process and due course of law. Although his argument is unclear, Appellant appears
to assert a violation of his state due course of law rights as well as a violation of his federal due process
rights.

 The Texas Rules of Appellate Procedure require that a brief "must state concisely all issues or
points presented for review" and "contain a clear and concise argument for the contentions made." Tex.
R. App. P. 38.1(e), (h). "The statement of an issue or point will be treated as covering every subsidiary
question that is fairly included." Tex. R. App. P. 38.1(e).

 As a general rule, we consider an issue on appeal, even though technically it is not properly
briefed, if our attention is directed to a specific complaint about the trial court's action contained in the
record. Turner v. State, 4 S.W.3d 74, 81 (Tex. App.-Waco 1999, no pet.). Appellant's brief does not
direct us to a specific complaint. Appellant's brief fails to provide any argument or authorities to
support the issue he has raised. This renders the issue inadequately briefed and, as such, it will not be
considered by this court. Robinson v. State, 851 S.W.2d 216, 222, n.4 (Tex. Crim. App. 1991).


Conclusion


 Based on our review of the record before us, we conclude that the evidence is sufficient for the
trial court to make the finding of necessity for J.N.V. to testify by closed circuit television. The record
in this case does not support Appellant's claim of constitutional violations. Appellant's sole issue is
overruled.

 The judgment of the trial court is affirmed.


 DIANE DEVASTO 

 Justice



Opinion delivered November 26, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.








(DO NOT PUBLISH)
1. Act of May 28, 1997, 75th Leg., R.S., ch. 1286, § 2, 1997 Tex. Gen. Laws 4911 (amended 1999, 2001,
2003) (current version at Tex. Pen. Code Ann. § 22.021 (Vernon Supp. 2004)).
2. Act of May 25, 1983, 68th Leg., R.S., ch. 599, § 1, 1983 Tex. Gen. Laws 3828 (amended 1987, 1991,
1995, 2001) (current version at Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp. 2004)).
3. Count five of the indictment was abandoned.